# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Shirley Cross,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-16-08074-PCT-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Dawn Shirley Cross's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl.'s Br."), Defendant SSA Commissioner's Opposition (Doc. 14, "Def.'s Br."), and Plaintiff's Reply (Doc. 15, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now reverses the Administrative Law Judge's decision (R. at 12-24) as upheld by the Appeals Council (R. at 1-3).

**I.     BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on July 27, 2009 (R. at 238), and Supplemental Security Income on August 11, 2009[1] (R. at 233), for a period of disability beginning July 13, 2009. Plaintiff's claim was denied initially on

---

[1] Plaintiff's Supplemental Security Income Application appears to have been disposed of, because the Court could not find any further documents in the administrative record referring to that Application.

November 10, 2009 (R. at 110-13), and on reconsideration on January 13, 2010 (R. at 114-16). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on August 24, 2011. (R. at 60-76.) On September 14, 2011, the ALJ apparently denied Plaintiff's Application.[2] (*See* R. at 80.) On December 20, 2012, the Appeals Council remanded the denial to the ALJ to: (1) re-examine the medical records of treating physician Dr. Karen Smith, Plaintiff's rheumatologist, in comparison to those of Dr. Melissa Brown, Plaintiff's urologist, in determining Plaintiff's Residual Functional Capacity ("RFC"); (2) re-weigh Plaintiff's subjective complaints; and (3) take additional evidence from a Vocational Expert ("VE") as necessary. (R. at 80-82.)

Plaintiff testified at another hearing on January 14, 2014. (R. at 31-59.) On May 28, 2014, the ALJ again denied Plaintiff's Application. (R. at 12-24.) On February 25, 2016, the Appeals Council upheld the ALJ's second decision. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has severe impairments of seronegative spondyloarthropathy, mixed connective tissue disease, chronic kidney disease, obesity, hypertension, and migraine headaches. (R. at 14.) The ALJ concluded Plaintiff does not have the RFC to perform her past relevant work but, relying on the testimony of a VE, the ALJ concluded Plaintiff has the RFC to perform sedentary work such as planner/scheduler, procurement officer, and production timekeeper, such that Plaintiff is not disabled under the Act (R. at 15-24).

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's

---

[2] The first ALJ decision was not included as part of the administrative record.

disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's

RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred in finding Plaintiff's testimony less than fully credible; (2) the ALJ erred in weighing the assessments of Plaintiff's treating rheumatologist, Dr. Smith; and (3) the ALJ failed to articulate support from substantial evidence in the record in formulating Plaintiff's RFC. (Pl.'s Br. at 15-26.) The Court agrees that the ALJ committed reversible error.

### A. The ALJ Improperly Weighed Plaintiff's Testimony

Plaintiff argues that the ALJ erred in her consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 19-24.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony.

As the ALJ noted, Plaintiff has reported constant pain, swelling and stiffness in all of her joints, including her back, hands, feet, ankles, knees, and hips, on account of rheumatoid arthritis, lupus/immune system disease, and connective tissue disease. (R. at

17-18.) She also has kidney disease from substantial NSAID use. (R. at 17-18.) She has trouble getting out of bed in the morning and can at most sit for 15 to 20 minutes, stand for 30 minutes, and walk for 5 to 10 minutes at a time. (R. at 17-18.) She uses a cane to help her walk. (R. at 17-18.) She has trouble remembering things due to pain, and she tires easily and sleeps most of the day. (R. at 17-18.) Her husband does the housework, but she is able to prepare food and drive short distances in a car. (R. at 17-18.)

The ALJ discounted Plaintiff's testimony of pain and other limitations by finding it was inconsistent with her reports of daily activities. (R. at 20.) For example, she found that Plaintiff's "ability to drive does not seem consistent with her allegations of pain, weakness, and loss of motor control in her hands," though this inconsistency is not clear to the Court, because Plaintiff reported being able to drive only short distances and did not testify that her grip was never strong enough to hold a steering wheel. Likewise, the ALJ's other examples of inconsistencies are unsupported or lack specificity. The ALJ cites records stating Plaintiff had chest pain while doing yard work and that her primary care physician recommended walking an hour a day, but this is not specific evidence of activities Plaintiff actually performed. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014) (finding ALJ improperly relied on a claimant's activities where there was no evidence as to the extent, manner or complexity of the activities).

As another example, while Plaintiff said she can watch television, the Court does not agree with the ALJ that this contradicts her reported lack of an ability to concentrate. One does not require the other. The ALJ also discredits Plaintiff because she uses a cane to help her ambulate even though none has been prescribed by a doctor. It is unclear which reported symptom this activity is inconsistent with. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (concluding the ALJ erred by failing to "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony"). Most importantly, the ALJ does not explain, as she must, how the daily tasks Plaintiff is able to complete would be transferrable to the work setting, other than by conclusory, blanket reasoning. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597

(9th Cir. 1989). By referring to purported inconsistencies between Plaintiff's symptom testimony and daily activities without either relevance, specificity or support, the ALJ failed to provide a sufficiently specific, clear or convincing reason to discredit Plaintiff's symptom testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1014-16 (9th Cir. 2014).

The ALJ also discredited Plaintiff's symptom testimony by cherry-picking certain observations from medical reports where Plaintiff had shown improvement or was stable (R. at 22)—which by itself is not sufficiently specific to conclude that Plaintiff is not experiencing the pain or other symptoms she details—and ignoring the myriad reports of Plaintiff's "uncontrolled" or "chronic daily" pain. (R. at 441-44, 463-66, 484-86.) The ALJ concluded that "the credibility of the claimant is less than stellar in this case, as her subjective allegations are far out of proportion to the objective evidence." (R. at 19.) As Plaintiff points out in her brief, the ALJ's conclusion about Plaintiff's credibility is error as a matter of law in that it isolates certain portions of the medical record while disregarding others, and it rejects claimant's testimony regarding the *severity* of her symptoms based on the ALJ's characterization, or mis-characterization, of the "objective evidence," when it is beyond dispute that the symptoms are to be expected from Plaintiff's conditions. *Garrison*, 759 F.3d at 1014-16; *Burch*, 400 F.3d at 680.

As a result, the ALJ erred in not accepting Plaintiff's symptom testimony and taking it into account in formulating Plaintiff's RFC—which, the VE testimony shows, would have resulted in a finding of disability. This, by itself, is reversible error. Indeed, the Court agrees with Plaintiff (Pl.'s Br. at 24) that the ALJ's failure to provide a specific, clear and convincing reason to discredit Plaintiff's testimony is sufficient to warrant a reversal of the ALJ's determination that Plaintiff is not disabled under the Act.[3] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 & n.12 (9th Cir. 2007) ("Further proceedings are unnecessary because the ALJ did not provide a legally sufficient reason

---

[3] As a result, the Court need not further examine Plaintiff's third argument for reversal, that the ALJ failed to articulate support from substantial evidence in the record in formulating Plaintiff's RFC.

- 6 -

for rejecting [Plaintiff's] testimony, which *alone* establishes that [Plaintiff] is entitled to benefits.")

### B. The ALJ Did Not Assign Proper Weight to the Assessments of Dr. Smith

Though the ALJ's error in assessing Plaintiff's credibility is dispositive, the Court will also address Plaintiff's argument that the ALJ committed reversible error by assigning inadequate weight to the medical assessments of Plaintiff's treating rheumatologist, Dr. Smith. (Pl.'s Br. at 15-19.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

The inconsistencies identified between Dr. Smith's opinions and those of other treating or examining physicians are not necessarily inconsistencies, as discussed below. The Court would thus be justified in applying the "clear and convincing reasons" standard to the ALJ's rejection of Dr. Smith's assessments, but in any event the ALJ erred under either standard of review of this evidence for each of the reasons Plaintiff points out in her brief. (Pl.'s Br. at 15-19.)

Dr. Smith is Plaintiff's treating rheumatologist—a specialist in the connective tissue, joint and autoimmune impairments that the medical record shows cause the majority of Plaintiff's pain and other symptoms. Dr. Smith has cared for Plaintiff over a number of years—at least 2009 to 2013—and, in at least five functional assessments of Plaintiff—2009, 2010 (2), 2011, and 2013 (*see* R. at 21)—Dr. Smith concluded that Plaintiff was able to do less than sedentary work because of severe inflammatory disease in the back, shoulders, ankles and hands, as well as associated pain and fatigue. (R. at 438-40, 447-49, 460-62, 477-79.) Remarkably, the ALJ found Dr. Smith's opinion was "entitled to little weight." (R. at 21.)

One reason the ALJ gives to discount Dr. Smith's assessments is that it is inconsistent with statements by Dr. Benitez, Plaintiff's primary care physician, advising Plaintiff to walk one hour every day, and by Dr. Wong, a cardiologist, that Plaintiff had tightness in her chest after working in the yard. (R. at 19.) Neither doctor is a specialist in the impairments on which Dr. Smith opined, and both doctors were treating Plaintiff for heart-related issues—hypertension and chest tightness—and not connective tissue, joint or autoimmune diseases that caused the symptoms Dr. Smith noted. Aside from the fact that the comments by Drs. Benitez and Wong were too indefinite to be probative, as discussed above, the ALJ's reliance on the comments to impeach Dr. Smith's findings was also improper because "examining physicians [focus] their attention on the subject of [the patient's] complaint," which in those instances was a heart-related issue. *See Widmark v. Barnhart*, 454 F.3d 1063, 1067-68 (9th Cir. 2006).

Likewise, it was error for the ALJ to find "most [notable]" the report of Dr. Chipman, a consulting medical examiner, and to outweigh the assessments of Dr. Smith, who treated Plaintiff for years, with Dr. Chipman's assessment, both because he examined Plaintiff only once and because he concluded only that Plaintiff exhibited no synovitis[4] *at that time*. (R. at 21.) Dr. Chipman's equivocal assessment based on one examination is simply not a legitimate reason to discount the records of the doctor who treated Plaintiff's impairments for years, let alone a clear and convincing reason. *See Smolen*, 80 F.3d at 1285 (noting opinions of treating physicians generally given more weight than those of non-treating physicians); 20 C.F.R. § 404.1527(c)(2).

To the extent the ALJ justifies discounting Dr. Smith's assessments because she opined that Plaintiff is disabled from work and such a conclusion is the province of the ALJ (R. at 21), there is no dispute the ALJ makes the ultimate disability determination. But the ALJ fails to describe how this statement makes the balance of Dr. Smith's

---

[4] Synovitis is inflammation of the synovial membrane of a joint that may result from rheumatologic diseases and cause pain, stiffness and swelling. (Pl.'s Br. at 5.)

assessments invalid—including those specifically addressing Plaintiff's functional capacity. *See Marsh v. Colvin*, 792 F.3d 1170, 1171-72 (9th Cir. 2015).

Finally, like her analysis in discrediting Plaintiff's symptom testimony, the ALJ states that Dr. Smith's assessments "do not match treatment records at all." (R. at 21.) But, as before, the ALJ's analysis either lacks specificity as to which assessment does not match which treatment record, or is based on cherry-picking statements from the record indicating Plaintiff is doing better or is stable and ignores statements indicating the opposite. The ALJ's selective, overreaching characterization of the medical record is no basis to discount Dr. Smith's assessments, let alone a clear and convincing one. *See Garrison*, 759 F.3d at 1012-14.

In sum, the ALJ erred in her consideration of Dr. Smith's assessments, and—as the VE testimony at minimum indicates—this, too, is reversible error. *See Benecke v. Barnhart*, 379 F.3d 587, 596 (9th Cir. 2004) (noting that reversal is proper where the record makes clear the claimant's entitlement to benefits even if the VE testimony is not extensive).

### C. The Credit-As-True Rule Applies

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl.'s Br. at 26.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler*, 775 F.3d at 1099-1102. These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the

relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony as well as the opinions of treating specialist, Dr. Smith. If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022-23; *Lingenfelter*, 504 F.3d at 1040-41 & n.12.

## IV. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits under the Act and remand for a calculation of benefits.

IT IS THEREFORE ORDERED reversing the May 28, 2014 decision of the Administrative Law Judge, (R. at 12-24), as upheld by the Appeals Council on February 25, 2016, (R. at 1-3).

IT IS FURTHER ORDERED remanding this case to the Social Security Administration for a calculation of benefits.

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2017.

Honorable John J. Tuchi
United States District Judge